Titus M. Welsh, Appellant, v. Borough of Beaver Falls et al.

*Boroughs—Waterworks—Contract.*

Where a borough has been enjoined from constructing municipal water-works because, by a contract with a private corporation, it had exhausted its municipal power to introduce water, it will not be permitted to accomplish in an indirect way, what it has no power to do directly, and, therefore, it cannot subsequently make a contract with another private corporation to supply the borough with water for fire and other purposes, to supply the citizens of the borough with water at rates designated in the contract, and to sell the plant to the borough at a price not exceeding the costs of the same. Metzger v. Borough of Beaver Falls, 178 Pa. 1, followed.

Argued Feb. 16, 1898. Appeal, No. 18, Oct. T., 1898, by plaintiff, from decree of C. P. Beaver Co., June T., 1897, No. 5, on bill in equity. Before Sterrett, C. J., Green, Williams, McCollum, Mitchell, Dean and Fell, JJ. Reversed.

Bill in equity for an injunction to restrain the letting of a municipal contract.

The facts appear by the opinion of the Supreme Court.

Wilson, P. J., entered the following decree:

Now, October 21, 1897, this cause came on to be further heard, and was argued by the counsel, and thereupon, upon consideration thereof, it is ordered, adjudged and decreed as follows, viz: That an injunction issue enjoining the defendant borough and its officers from passing the ordinance complained of in plaintiff's bill, with the provision contained in the sixth paragraph thereof, providing for the purchase of the People's Water Company plant at any time after same is completed.

*Errors assigned* were (1) in not finding as a matter of law that, having consented to the Union Water Company's providing a supply of water to the borough, and the water company having provided the same, the borough is without authority to contract with another company to provide a supply of water; (2) in not making a decree enjoining the borough and the defendants generally from passing any ordinance authorizing a contract with the People's Water Company in relation to the supply of water.

*Charles H. McKee*, of *Lyon & McKee*, with him *Buchanan & McConnel*, for appellant.—Once the authority to meet the public want was exercised, and the want supplied, the municipal function was gone, and there was no authority for another exercise of the power: White et al. v. City of Meadville, 177 Pa. 643; Metzger v. Beaver Falls Borough, 178 Pa. 1; Wilson v. Borough of Rochester, 180 Pa. 509.

In view of the law and the findings of fact in this case, it must follow that, at the time of the filing of the plaintiff's bill, all right to exercise the authority of supplying water within the borough of Beaver Falls, so far as the borough is concerned, was vested in the Union Water Company. It had been so adjudicated on a taxpayer's bill. Its right to exercise the authority was vested and its obligations fixed. See Metzger v. Borough of Beaver Falls, 178 Pa. 1.

The borough under the circumstances can no more bind itself to use the public funds in maintaining a second supply than it could, after having itself provided a supply, let a contract for a second supply. It can no more aid in the construction of a second works than it could, after having built and being in the ownership and use of a sufficient works, contract for and build another works. Its authority has been exhausted.

The conduct of the defendants and their relations with the People's Water Company, as disclosed by the findings of fact and the record in the case, shows that they are co-operating to evade the injunction upon the defendants in case of Metzger v. The Borough of Beaver Falls, supra, in which they were enjoined from executing any contract for the construction of their proposed works, and restrained from passing any ordinance, or doing any other act, matter or thing, in furtherance of their purpose to erect waterworks.

*R. H. Jackson*, *W. S. Morrison* and *J. Rankin Martin*, for appellees.—It is contended that the borough having consented to the Union Water Company erecting works, etc., as evidenced by its contract of 1893, has exercised its whole authority in the premises and has "provided" a sufficient supply; nothing remains to be done, etc. The answer to this is: The law makes no provision for consent of the borough as a condition precedent to the exercise of corporate rights by the water company. The

state authorized the company to supply water in the locality named in its charter; the borough, if it so desired, could not prevent the water company from acting. It is a misapprehension of the law of June 2, 1887, that suggests the view that the rights of the water company vest by consent of the borough. The act of 1887 provides such condition only in the case of gas companies (sec. 1, Act of June 2, 1887, P. L. 310). This provision is contained in section 2 of said act, which amends clause 1 of section 34, act of April 29, 1874, which clause relates to gas companies only.

A contrary view leads to the position that private water companies may have exclusive franchises and privileges, a position in conflict with the acts of assembly: Luzerne Water Company v. Toby Creek Water Company, 148 Pa. 568. In White v. Meadville, 177 Pa. 643, this Court says: " Here, then, plainly, were two distinct methods by which the municipality could supply its citizens with water; by putting either method in operation, the same end was accomplished, that is, the supplying of the citizens with water; no community will pay double for an article of necessity or luxury. If the property holder must by compulsory taxation support the municipal system, he will not voluntarily support the private corporation system. . . . . As long as the city keeps within the scope of its powers to bargain it must stand by the bargain the same as an individual."

The same as an individual; neither more nor less. It certainly may not be said that an individual whose contract for water supply has been terminated, is barred from contracting anew with any other company that has power to furnish.

In DuBois Borough v. Water Works Company, 176 Pa. 438, in discussing the relation of the borough to the water company that supplied it with water under contract, this Court said, that the borough " is a mere consumer under contract, and stands upon the same basis as any private citizen in regard thereto."

OPINION BY MR. JUSTICE DEAN, July 21, 1898:

In Metzger v. Borough of Beaver Falls, 178 Pa. 1, for the reasons there at length given, the defendant was enjoined from constructing municipal waterworks, principally, however, because it had already exhausted its municipal power to introduce

water, by its contract theretofore made with the Union Water
Company, a private corporation. Immediately following the
decision in that case, a number of the taxpayers of the borough
made application and obtained a charter for the People's Water
Company, to supply water to the same borough; then, an ordi-
nance was presented in borough councils, which passed first
reading, enacting that the borough should execute a contract
with the new company to supply it with water for fire and
other purposes, for the period of ten years from January 1,
1898, at an annual compensation of $4,000; further, that
the company should furnish to all citizens, by the latest im-
proved methods, water at certain rates; an elaborate table of
which rates was to be embodied in the contract; further, that
the borough should have the right to purchase at any time after
the completion of the plant the fire hydrants put in by the com-
pany, at the price of $6,000; further, that after the completion
of the plant, the borough should have the right to purchase the
plant of the company at a price not exceeding the cost of same.
The court below, after hearing, enjoined councils from adopting
that part of the contract providing for the purchase of the plant
after completion, but declined to otherwise interfere.

The proposed contract is palpably an attempt to evade the
decree of this Court in Metzger v. Borough of Beaver Falls,
supra. We held in that case that, under the act of 1851, the
borough might adopt either of two methods for the supply of
water. It might build its own works, as many boroughs have
done, or it might contract with a private corporation for the
same purpose; but it could not have both methods in operation
at the same time; the adoption of either was the exhaustion of
municipal power on that subject. When a contract is made
with a private water company, authorized usually, only to build
its works and maintain its plant at one place, it would be
grossly inequitable to hold that the municipality, after inviting
the construction of such works, and contracting with the com-
pany for the water supply, could at any time thereafter destroy
them by constructing its own works. To authorize such mu-
nicipal action the statutory right must be explicit; it will not
be implied from doubtful language.

What is this contract, in substance? Clearly, nothing but a
contract by an owner with a builder, if the owner so chooses to

regard it; the borough has the right to purchase at cost the plant, as soon as completed, and for $6,000 the hydrants; then it becomes the owner of a municipal water plant which it must operate as such; the very action that was enjoined in the case cited. But it goes further and, by enumerating no less than twenty-two special uses in a long table, prescribes what shall be the water rates, from a drug store to a water-closet, and from a dwelling to a urinal; treating the new company as a municipal institution, and as if already under municipal control.

Merely enjoining embodying in the contract the right to immediately purchase the plant does not reach the illegal act. It is true, that provision unmistakably discloses the purpose to evade our former decree; but this purpose is still to a large extent carried out by the provisions for introduction of the water, and the absolute payment of the sum of $4,000 annually, and the right to purchase the hydrants for $6,000.

We express no opinion as to the right of the borough, by proper assent, to permit a second company to lay pipes on the streets and alleys within its limits. That question is not before us. We do hold however, that the borough cannot indirectly and evasively do that which by our former decree it was prohibited from doing directly; it exhausted its power to contract with water companies for municipal purposes when it made its contract with the Union Company.

The decree of the court below is reversed, and it is now ordered and decreed that an injunction issue, directed to defendants enjoining them from passing the ordinance set out and complained of in plaintiff's bill, and from entering into any contract with " The People's Company " for a supply of water for municipal or fire purposes, or other purposes.